UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA KERSTING, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>                                    Defendants. | Case No.:  23-CV-159 TWR (AHG)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION, (2) ORDERING PARTIES TO ARBITRATION, AND (3) DISMISSING WITHOUT PREJUDICE THIS ACTION**<br><br>(ECF No. 8) |

Presently before the Court is Defendant UnitedHealth Group's Motion to Compel Arbitration and to Dismiss or, Alternatively, Stay the Matter ("Mot.," ECF No. 8), as well as Plaintiff Teresa Kersting's Response in Opposition to ("Opp'n," ECF No. 10) and Defendant's Reply in Support of ("Reply," ECF No. 13) the Motion.  The Court held a hearing on June 15, 2023.  (*See* ECF No. 15.)  Having carefully considered the Parties' arguments, Plaintiff's Unlimited Civil Complaint ("Compl.," ECF No. 1 at 11–38[1]), the record, and the relevant law, the Court **GRANTS** Defendant's Motion, **ORDERS** the

---

[1] To avoid ambiguity, all pin citations to ECF No. 1 refer to the CM/ECF pagination electronically stamped in the top, righthand corner of each page.

Parties to submit their claims to arbitration, and **DISMISSES WITHOUT PREJUDICE** this action.

**BACKGROUND**

I.   **Factual Background[2]**

   A.   *The Parties*

Plaintiff is "a practicing and devout Christian" who "regularly attends church and actively participates in church activities." (*See* Compl. ¶ 18.) "Among Plaintiff's sincerely held religious beliefs . . . is that human life is pre[c]ious." (*Id.* ¶ 19.) "[T]herefore, abortion is immoral and taking vaccines developed using fetal cells that descended from elective abortions in their development (such as the Johnson and Johnson COVID-19 vaccine) or testing (such as the Pfizer and Moderna COVID-19 vaccines) [is] unethical, immoral, and in violation of Plaintiff's sincerely held religious beliefs." (*Id.*) Plaintiff was a Registered Nurse, (*see id.* ¶ 20), employed by Defendant as a Senior Clinical Transformation Consultant. (*See id.* ¶ 21.)

"Defendant is a medical service provider that operates a clinic in Carlsbad in the County of San Diego, California and/or a health plan payor with contracted practices and providers in the State of California, including a clinic in Carlsbad in the County of San Diego, California." (*Id.* ¶ 22.)

/ / /

/ / /

---

[2] "[O]n a motion to compel arbitration, a court 'may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014) (quoting *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011)) (citing *King v. Hausfeld*, No. C-13-0237 EMC, 2013 WL 1435288, at *1 (N.D. Cal. Apr. 9, 2013)); *accord Kalasho v. BMW of N. Am., LLC*, 520 F. Supp. 3d 1288, 1293 (S.D. Cal.) ("The Court may properly consider evidence outside the pleadings on a motion to compel arbitration." (first citing *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013), *aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc.*, 627 F. App'x 621 (9th Cir. 2015); then citing *Garcia v. Trademark Constr. Co.*, No. 18-CV-1214 JLS, 2019 WL 1317329, at *3 (S.D. Cal. Mar. 22, 2019))), *appeal dismissed*, No. 21-55287, 2021 WL 7711043 (9th Cir. Sept. 27, 2021).

2

### B.    The Parties' Arbitration Agreement

On May 25, 2017, Defendant offered Plaintiff a position as Senior Clinical Practice Consultant in the "Clin Leadership & Accountability division" of Clinical Services.  (*See* ECF No. 8-3 ("Weedman Decl.") ¶ 6.)  In its offer letter, Defendant "advised Plaintiff that the offered position included an Arbitration Policy" as follows:

> Included with this letter is UnitedHealth Group's Employment Arbitration Policy.  The Policy is a binding contract between you and UnitedHealth Group to resolve through arbitration all covered employment-related disputes that are based on a legal claim, and mutually waive the right to a trial before a judge or jury in court in favor of final and binding arbitration.  Your agreement to be bound by the terms of the Policy is a condition of your employment.  Once you are on board, you will be required to electronically acknowledge in Employee Self Service your understanding of the Policy.
>
> . . .
>
> By accepting employment, you will have agreed to all terms of this offer letter and its attachments.

(*See id.* ¶ 7; *see also* ECF No. 8-3 Ex. A at 7.)  "[T]he Arbitration Policy was accessible electronically via a link in the electronically delivered Offer Letter, permitting Plaintiff to fully consider before accepting her employment."  (Weedman Decl. ¶ 8.)

Plaintiff later signed the Arbitration Agreement during her onboarding on June 19, 2017.  (*See id.* ¶ 9; *see also* ECF No. 8-3 Ex. B.)  "At no time did Plaintiff question the policy, request any changes, or conduct herself in any manner contrary to her express acceptance of the agreement, and implied agreement though continued employment."  (Weedman Decl. ¶ 11.)

### C.    Plaintiff's Employment by and Separation from Defendant

Plaintiff began working for Defendant in June 2017.  (*See* Weedman Decl. ¶ 12.)  She worked fully remote from her home in Carlsbad, California.  (*See* Compl. ¶ 21.)

On August 5, 2021, the California Department of Public Health issued an order requiring healthcare workers, unless exempted, to receive the COVID-19 vaccine.  (*See id.* ¶ 26; *see also* ECF No. 10-1 Ex. 1.)  Under the order, workers could be exempted from the

vaccination requirement if they "declined the vaccination based on Religious Beliefs." (*See* Compl. ¶ 26.)

In October 2021, Defendant notified its non-remote employees that they would be required to receive the COVID-19 vaccine. (*See id.* ¶ 24.) On November 9, 2021, Defendant also informed Plaintiff, a remote employee, that she would be required to get the COVID-19 vaccine by November 30, 2021. (*See id.* ¶ 25.)

Plaintiff spoke with her supervisor, Tim Monk, regarding her concerns about losing her employment due to the conflict between her religious beliefs and the COVID-19 vaccination mandate. (*See id.* ¶ 28.) Mr. Monk encouraged her to complete a Request for Religious Exemption but also informed her that no exemption would be granted. (*See id.*)

Plaintiff submitted her Request for Religious Exemption through Defendant's Human Resources link on November 12, 2021. (*See id.* ¶ 29.) "Her Request for Religious Exemption described in detail her religious beliefs, practices, and observances, including, but not limited to, her body being a temple of the Holy Spirit and the use of fetal cells descended from elective abortions is immoral, unethical, and in violation of her religious beliefs." (*Id.*)

Although Plaintiff believes that other employees received medical and religious accommodations, Plaintiff's Request was denied on November 15, 2021. (*See id.* ¶ 31.) On November 19, 2021, Plaintiff also received an email from Jen St. George denying the request. (*See id.* ¶ 33.) Plaintiff responded to ask for an explanation of the denial, (*see id.* ¶ 34), and Ms. St. George responded on November 29, 2021, explaining that Plaintiff's request had been denied because Plaintiff would need to travel to provide face-to-face interactions in the office. (*See id.* ¶ 35.) Ms. St. George also referred Plaintiff to Defendant's "Frequently Asked Questions for Employees for COVID-19," which explained that there was no appeals process for requests for religious exemption. (*See id.* ¶ 36.)

"Consistent with her sincerely held religious beliefs, Plaintiff did not comply with Defendant's" vaccination requirement. (*See id.* ¶ 44.) On November 30, 2021, Defendant

informed Plaintiff that she would be placed on an unpaid 30-Day Administrative Leave. (*See id.* ¶ 45.)  The notice also explained that Plaintiff's employment could be terminated at the end of her administrative leave if she failed to comply with the COVID-19 vaccination policy.  (*See id.*)

Defendant terminated Plaintiff's employment on January 7, 2022.  (*See id.* ¶ 46; *see also* Weedman Decl. ¶ 12.)

## II.   Procedural History

On December 15, 2022, Plaintiff initiated this action by filing her Complaint against Defendant and Does 1 through 20 in the Superior Court of the State of California, County of San Diego.  (*See generally* ECF No. 1 at 11–38.)  Plaintiff asserted six causes of action for (1) religious discrimination—failure to accommodate in violation of Cal. Gov't Code § 12940(a)(1); (2) religious discrimination—disparate treatment in violation of Cal. Gov't Code § 12940(a)(1); (3) harassment in violation of Cal. Gov't Code § 12940(j); (4) retaliation in violation of Cal. Gov't Code § 12940(h); (5) failure to prevent discrimination and harassment in violation of Cal. Gov't Code § 12940(k); and (6) wrongful termination in violation of public policy.  (*See generally id.*)

Defendant's counsel emailed Plaintiff's counsel on January 13, 2023, to transmit a copy of the Parties' Arbitration Agreement and to inquire whether Plaintiff was willing to stipulate to arbitration.  (*See* ECF No. 8-2 Ex. D at 52; ECF No. 10-1 Exs. 3–4; *see also* ECF No. 8-2 ("Presser Decl.") ¶ 4; ECF No. 10-1 ("Sollestre Decl.") ¶ 5.)  Plaintiff's counsel responded on January 17, 2023, that he would review the Arbitration Agreement "and get back to [defense counsel]."  (*See* Ex. D at 51; ECF No. 10-1 Ex. 5; *see also* Presser Decl. ¶ 5; Sollestre Decl. ¶ 7.)  He added, "We should have plenty of time to address before your client's pleading is due, however, please be aware that I will grant on extension if time gets close and this issue has not been addressed."  (*See* Ex. D at 51; ECF No. 10-1 Ex. 5; *see also* Presser Decl. ¶ 5; Sollestre Decl. ¶ 7.)

Defendant answered Plaintiff's Complaint on January 26, 2023, (*see generally* ECF No. 2), and removed to this Court on the basis of diversity jurisdiction on January 27, 2023.

(*See generally* ECF No. 1.)  As a result, Plaintiff's counsel believed that Defendant had chosen not to pursue arbitration.  (*See* Sollestre Dec. ¶ 11.)  Based on Defendant's filing of an Answer, on January 30, 2023, the Honorable Allison H. Goddard set an Early Neutral Evaluation ("ENE") and Case Management Conference ("CMC") for March 9, 2023.  (*See* ECF No. 4.)

On February 3, 2023, defense counsel contacted Plaintiff's counsel by phone to follow up on whether Plaintiff would stipulate to arbitrate.  (*See* Presser Decl. ¶ 6.) Plaintiff's counsel declined, believing the Arbitration Agreement to be unenforceable. (*See id.*; *see also* ECF No. 8-1 Ex. E at 54.)

The Parties engaged in a teleconference on February 14, 2023, to discuss case management and discovery issues in anticipation of the March 9, 2023 ENE and CMC. (*See* Sollestre Decl. ¶ 13; *see also* ECF No. 5 at 1.)  They filed a Joint Discovery Plan on February 28, 2023.  (*See* ECF No. 5; *see also* Sollestre Decl. ¶ 16.)

Plaintiff timely submitted her confidential ENE statement to Magistrate Judge Goddard on March 2, 2023, (*see* Sollestre Decl. ¶ 17), following which Defendant's counsel sent Plaintiff a draft joint motion to continue the ENE and CMC.  (*See id.* ¶ 18; ECF No. 10-1 Ex. 13.)  Plaintiff reluctantly agreed, (*see* Sollestre Decl. ¶ 18), and Defendant filed the joint motion.  (*See* ECF No. 6.)  Magistrate Judge Goddard granted the Parties' request, continuing the ENE to May 3, 2023.  (*See* ECF No. 7.)

On March 6, 2023, the Parties agreed to exchange their initial disclosures under Federal Rule of Civil Procedure 26(a)(1) by March 10, 2023.  (*See* Sollestre Decl. ¶ 21; ECF No. 10-1 Ex. 16.)  Plaintiff served her initial disclosures, which identified twenty-seven witnesses, produced 165 pages of documents, and provided a detailed breakdown of damages, on March 9, 2023.  (*See* Sollestre Decl. ¶ 22; ECF No. 10-1 Ex. 17.)  Defendant served its initial disclosures, which identified only one witness and included no document production, on March 10, 2023.  (*See* Sollestre Decl. ¶ 23; ECF No. 10-1 Ex. 18.)

/ / /

/ / /

1  Defendant filed the instant Motion on March 24, 2023.  (*See generally* ECF No. 8.)
2  On May 3, 2023, Magistrate Judge Goddard held an ENE, but the Parties failed to reach a
3  settlement.  (*See* ECF No. 11.)

### LEGAL STANDARD

5  If a suit is proceeding in federal court, the party seeking arbitration may move the
6  district court to compel the resisting party to submit to arbitration pursuant to their private
7  agreement to arbitrate the dispute under the Federal Arbitration Act ("FAA"), 9 U.S.C.
8  §§ 1–16.  *See* 9 U.S.C. § 4.  In determining whether to compel a party to arbitrate, the court
9  may not review the merits of the dispute; rather, the court's role under the FAA is limited
10  to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether
11  the agreement encompasses the dispute at issue."  *Cox v. Ocean View Hotel Corp.*, 533
12  F.3d 1114, 1119 (9th Cir. 2008) (citation omitted); *see Sellers v. JustAnswer LLC*, 73 Cal.
13  App. 5th 444, 460 (2021) ("Under both federal and state law, the threshold question
14  presented by a petition to compel arbitration is whether there is an agreement to arbitrate.");
15  *Cunico Corp. v. Custom Alloy Corp.*, No. CV 14-1234 PA (AJWx), 2017 WL 8793221, at
16  *9 (C.D. Cal. Dec. 15, 2017) ("In California, an arbitration provision 'must clearly and
17  unambiguously show that the party has agreed to resolve disputes in a forum other than the
18  judicial one.'" (citation omitted)).

19  "To evaluate the validity of an arbitration agreement, federal courts 'should apply
20  ordinary state-law principles that govern the formation of contracts.'"  *Ingle v. Cir. City*
21  *Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v.*
22  *Kaplan*, 514 U.S. 938, 944 (1995)).  "The [party seeking arbitration] bears the burden of
23  proving the existence of a valid arbitration agreement by the preponderance of the
24  evidence, and a party opposing the petition bears the burden of proving by a preponderance
25  of the evidence any fact necessary to its defense."  *Bridge Fund Cap. Corp. v. Fastbucks*
26  *Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (alteration in original) (quoting
27  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997)).  "[T]he FAA's
28  'policy favoring arbitration' . . . is to make 'arbitration agreements as enforceable as other

contracts, but not more so.'"  *Morgan v. Sundance, Inc.*, 596 U.S. ___, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)).

## ANALYSIS

Through the instant Motion, Defendant seeks to compel Plaintiff to arbitrate her claims.  (*See generally* Mot.; ECF No. 55-1 ("Mem.").)  Plaintiff conceded at oral argument that the Arbitration Agreement covers her claims.  Nonetheless, Plaintiff opposes on two grounds: (1) the Arbitration Agreement is unconscionable, (*see* Opp'n at 7–12); and (2) alternatively, Defendant has waived its right to compel arbitration.  (*See id.* at 12–17.)  Plaintiff acknowledged at oral argument that it is her burden to establish unconscionability and waiver.  *See also, e.g.*, *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (waiver); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (unconscionability) (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015) ("*Sanchez*")); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013)).

## I.  Unconscionability

Plaintiff first contends that the Arbitration Agreement is unenforceable because it is unconscionable.  (*See* Opp'n at 7–12.)  Under California law,[3] "[t]he general principles of unconscionability are well established."  *OTO*, 8 Cal. 5th at 125.  "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party."  *Id.* (citing *Sonic*, 57 Cal. 4th at 1133).  "Under this standard, the unconscionability doctrine has both a procedural and a substantive element."  *Id.* (internal quotation marks omitted) (quoting *Sonic*, 57 Cal. 4th at 1133).  "The procedural element addresses the circumstances

---

[3] The Parties appear to agree that the Arbitration Agreement is governed by California law, (*compare* Mot.; *and* Reply, *with* Opp'n), and because Plaintiff was employed in California, the Court agrees.  *See, e.g.*, *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (applying California contract law where employee was employed there (citing *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.2002))).

of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. . . .   Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)).

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "Instead, they are evaluated on a sliding scale." *Id.* (internal quotation marks omitted) (quoting *Armendariz*, 24 Cal. 4th at 114). "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable." *Id.* (alteration in original) (quoting *Armendariz*, 24 Cal. 4th at 114). "Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." *Id.* at 125–26 (first citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982); then citing *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 635 (2015); and then citing *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 85 (2014)). "A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making." *Id.* at 126 (quoting *Sanchez*, 61 Cal. 4th at 912). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* (quoting *Sanchez*, 61 Cal. 4th at 912).

## A.   *Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.'" *OTO*, 8 Cal. 5th at 126 (quoting *Armendariz*, 24 Cal. 4th at 113). "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Id.* (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)) (citing *Armendariz*, 24 Cal. 4th at 113). "Arbitration contracts imposed as a condition of employment are typically

adhesive," *id.* (citing *Armendariz*, 24 Cal. 4th at 114–15; *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)), "and the agreement here is no exception." *See id.*

    "By itself, however, adhesion establishes only a 'low' degree of procedural unconscionability." *Davis v. Kozak*, 53 Cal. App. 5th 897, 907 (2020) ("*Davis*") (citing *Serpa*, 215 Cal. App. 4th at 704). "The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126 (citing *Baltazar*, 62 Cal. 4th at 1245–46; *Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1267–68 (2017)). "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* (emphasis in original and internal quotation marks omitted) (quoting *Pinnacle*, 55 Cal. 4th at 247) (citing *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 983 (2018)).

    Here, as Plaintiff conceded at oral argument, Plaintiff argues only that the Arbitration Agreement is a contract of adhesion because she "did not have a choice but to agree to the Policy." (*See* Opp'n at 11.) As mentioned above, however, adhesion alone—without more—establishes only "a 'low' degree of procedural unconscionability." *See Davis*, 53 Cal. App. 5th at 907 (citing *Serpa*, 215 Cal. App. 4th at 704). Because Plaintiff "d[oes] not attempt to show other sharp practices on the part of [Defendant], such as lying, manipulating, or placing [her] under duress[,]" nor d[oes] she argue that the Arbitration Agreement was "unreasonably prolix or complex," *see id.* (citing *Baltazar*, 62 Cal. 4th at 1245); (*see also* Reply at 7–8), the Court concludes that Plaintiff establishes only "a low degree of procedural unconscionability based on the agreement's adhesive nature." *See Davis*, 53 Cal. App. 5th at 910 (citing *Serpa*, 215 Cal. App. 4th at 704).

### B.   *Substantive Unconscionability*

    Although Plaintiff has made "only a minimal showing of procedural unconscionability based on adhesion[,]" she may still demonstrate that the Arbitration Agreement is unenforceable if she proves "a 'high' degree of substantive

unconscionability." *See Davis*, 53 Cal. App. 5th at 917 (citing *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013)).   Generally speaking, "[s]ubstantive unconscionability examines the fairness of a contract's terms."  *OTO*, 8 Cal. 5th at 129. "This analysis ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh . . . , unduly oppressive . . . , so one-sided as to shock the conscience . . . , or unfairly one-sided[.]"  *Id.* at 129–30 (internal quotation marks and citations omitted).  "All of these formulations point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain . . . , but with terms that are unreasonably favorable to the more powerful party." *Id.* at 130 (internal quotation marks omitted) (quoting *Sonic*, 57 Cal. 4th at 1145).

"[T]he paramount consideration in assessing [substantive] conscionability is mutuality."  *Davis*, 53 Cal. App. 5th at 910 (alterations in original) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)).  "Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability."  *Id.* (internal quotation marks omitted) (quoting *Abramson*, 115 Cal. App. 4th at 657).  "In making this determination, courts often look to whether the agreement meets a minimum level of fairness based on the factors set forth in *Armendariz*."  *Id.* (citing *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1248 (2011)).  Pursuant to *Armendariz*, "an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'"  24 Cal. 4th at 102 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

As Plaintiff acknowledged at the hearing, she challenges only the second *Armendariz* factor, arguing that the Arbitration Agreement "lacks an adequate discovery process." (*See* Opp'n at 7.)  "Certain limitations on discovery in the arbitration process is an appropriate method of streamlining the arbitration process – the full panoply of judicial

discovery is not required." *Ruiz v. Conduent Com. Sols., LLC*, No. 1:21-CV-1555 JLT CDB, 2023 WL 3379300, at *10 (E.D. Cal. May 11, 2023) (citing *Armendariz*, 24 Cal. 4th at 105–06; *Epstein v. Vision Serv. Plan*, 56 Cal. App. 4th 223, 246 (2020); *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 404 (2014) ("*Carmax*"); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 118 (2004)).  "Having limits on discovery is a hallmark of arbitration, and the mere fact that there are limits does not make an arbitration agreement *per se* substantively unconscionable." *Id.* (emphasis in original) (citing *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689–90 (2000)).  "As long as the limited discovery procedures adequately allow a plaintiff to vindicate her rights, the limited discovery is not unconscionable." *Id.* (citing *Armendariz*, 24 Cal. 4th at 105–06; *Carmax*, 224 Cal. App. 4th at 404; *Martinez*, 118 Cal. App. 4th at 118–19).  "To show substantive unconscionability, the plaintiff must show that the discovery procedures are inadequate under the circumstances of her case." *Id.* (citing *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 385 (2022); *Carmax*, 224 Cal. App. 4th at 405; *Martinez*, 118 Cal. App. 4th at 118–19).

In her Opposition, Plaintiff contends that the Arbitration Agreement will "prevent her from acquiring sufficient evidence to meet her burden of proof for the causes of action alleged," (*see* Opp'n at 7), because it provides per party for (1) one interrogatory limited to the identification of potential witnesses, (*see id.* at 7–8 (citing Ex. B ¶ D.10.a)); (2) twenty-five requests for production, (*see id.* at 8 (citing Ex. B ¶ D.10.b); (3) two eight-hour days of depositions of witnesses or the parties and one eight-hour day of depositions of expert witnesses, (*see id.* at 9 (citing Ex. B ¶ D.10.c)); and (4) no requests for admission. (*See id.*)  In its Reply, Defendant responds that Plaintiff "overstates and overcomplicates the discovery needs of this case," (*see* Reply at 5), and that she "has not credibly identified how the discovery limitations are insufficient." (*See id.* at 4.)  Further, even if the discovery were insufficient, the Parties can "request that the arbitrator allow additional discovery, and additional discovery may be conducted under the parties' mutual stipulation or as ordered by the arbitrator." (*See id.* (quoting Ex. B ¶ D.10.e).)

At oral argument, the Court asked Defendant's counsel whether he would stipulate to ten additional interrogatories per side and one additional eight-hour day of depositions per side.  Defense counsel indicated that this arrangement was "absolutely agreeable," and Plaintiff's counsel indicated that this additional discovery was satisfactory.  Based on Plaintiff's counsel's judicial admission and to the extent Plaintiff's substantive unconscionability argument is not moot, the Court concludes that the discovery procedures contemplated by the Arbitration Agreement as modified on the record at the June 15, 2023 hearing are adequate for Plaintiff to vindicate the rights asserted in her Complaint.  Accordingly, the Court concludes that Plaintiff has failed to establish that the Arbitration Agreement substantively unconscionable.

### C. Conclusion

"Under California law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable." *Holman v. Bath & Body Works, LLC*, No. 120CV01603NONESAB, 2021 WL 5826468, at *25 (E.D. Cal. Dec. 8, 2021) (first citing *Peng*, 219 Cal. App. 4th at 146; then citing *Armendariz*, 24 Cal. 4th at 114), *report & recomm. adopted*, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022).  Because Plaintiff has established only a low degree of procedural unconscionability and failed to show a high degree of substantive unconscionability, the Court concludes that Plaintiff has failed to prove that the arbitration agreement is unconscionable.  *See, e.g.*, *id.* (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010)); *Garcia v. Din Tai Fung Rest., Inc.*, No. 20-CV-02919-BLF, 2020 WL 6822909, at *9 (N.D. Cal. Nov. 20, 2020) (citing *Poublon, v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)).  "Therefore, the arbitration agreement is enforceable absent [Defendant] waiving its right to compel arbitration." *See Garcia*, 2020 WL 6822909, at *9.

## II. Waiver

Plaintiff alternatively argues that Defendant has waived its right to compel arbitration in this action.  (*See* Opp'n at 12–17.)  "[T]he party opposing arbitration . . . bears the burden of showing waiver, . . . [and] must demonstrate: (1) knowledge of an existing

13

right to compel arbitration and (2) intentional acts inconsistent with that existing right." *See Armstrong*, 59 F.4th at 1014 (citing *Hill v. Xerox Bus. Servs.*, 59 F.4th 457, 468–69 (9th Cir. 2023)). Contrary to Defendant's claim, (*see* Reply at 8), the Supreme Court recently clarified in *Morgan v. Sundance, Inc.*, that Plaintiff's "burden is no longer 'heavy[,]' [but i]nstead, . . . is the same as the burden for establishing waiver in any other contractual context." *See* 142 S. Ct. at 1014–15. Plaintiff also is no longer required to demonstrate prejudice. *See id.* at 1015 (citing *Hill*, 59 F.4th at 468–69).

Here, it is undisputed that Defendant knew of its right to compel arbitration. Indeed, Defendant itself acknowledges that its counsel emailed Plaintiff's counsel on January 13, 2023, to acknowledge receipt of Plaintiff's Complaint and to inquire whether Plaintiff was willing to stipulate to arbitration pursuant to their Arbitration Agreement. (*See, e.g.*, Presser Decl. ¶ 4.) It is therefore clear that Defendant knew of its right to compel arbitration from the outset.

The Court therefore turns to whether Plaintiff has established that Defendant took intentional acts that were inconsistent with its right to compel arbitration. "Because there is no 'concrete test,' for assessing whether [Defendant] took acts inconsistent with its right to arbitration, '[the Court] consider[s] the totality of the parties' actions.'" *See Armstrong*, 59 F.4th at 1015 (quoting *Hill*, 59 F.4th at 471). The Court "ask[s] whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate.'" *Id.* (second alteration in original) (quoting *Hill*, 59 F.4th at 473 n.19). "Under [Ninth Circuit] precedent, a party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.* (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmties., LLC*, 931 F.3d 935, 941 (9th Cir. 2019), *abrogated on other grounds as recognized by Armstrong*, 59 F.4th at 1015). A court may consider "the following factors as relevant to assessing waiver claims:"

23-CV-159 TWR (AHG)

(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; [and] (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place[.]

*Davis v. Shiekh Shoes, LLC*, 84 Cal. App. 5th 956, 964 (2022) ("*Shiekh*") (second alteration in original) (quoting *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988); *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).[4]

Here, Plaintiff contends that "Defendant took actions inconsistent with the right to arbitrate and substantially invoked litigation by filing an answer, removing the matter to federal court, delaying nearly four (4) months in bringing the instant motion, engaging in the Rule 26 initial disclosure process, and by delaying the ENE." (*See* Opp'n at 13.) Plaintiff analogizes to two cases: *Davis v. Continental Airlines, Inc.*, 59 Cal. App. 4th 205 (1997) ("*Cont'l Airlines*"), and *Shiekh*, 84 Cal. App. 5th 956. (*See* Opp'n at 13–16.) In *Continental Airlines*, the California Court of Appeal held that the defendants had waived their right to arbitrate where they had "raised the arbitration . . . issue . . . in their answers to plaintiff's complaint, [but] did nothing to bring about arbitration for approximately six months" and, "[i]n the meantime[,] they used court discovery procedures to obtain 1,600 pages of documents from plaintiff in 86 categories and to take plaintiff's 2-day, 410-page videotaped deposition." 59 Cal. App. 4th at 213. Similarly, in *Shiekh*, the defendant failed to move to compel arbitration until seventeen months after it had been served with the

---

[4] The California Supreme Court originally articulated a sixth factor—"whether the delay affected, misled, or prejudiced the opposing party." *See Shiekh*, 84 Cal. App. 5th at 964–65 (quoting *Peterson*, 849 F.2d at 467–68; *St. Agnes*, 31 Cal. 4th at 1196). As discussed above, *see supra* page 14, the United States Supreme Court has since clarified that prejudice is no longer required to demonstrate a waiver of one's right to arbitration. *See Morgan*, 142 S. Ct. at 1714.

23-CV-159 TWR (AHG)

complaint, during which time a jury trial date was set and the defendant "engaged in rounds of discovery" and made several court appearances.  *See* 84 Cal. App. 5th at 967–970.

Here, by contrast, Defendant raised the issue of arbitration from the outset when it acknowledged receipt of Plaintiff's Complaint.  (*See* Presser Decl. ¶ 4; Ex. D.)  Further, when Defendant answered Plaintiff's Complaint on January 26, 2023, it asserted the Arbitration Agreement as an affirmative defense.  (*See* ECF No. 2 at 5 ¶ 23.)  Although Plaintiff believed at this time that Defendant had chosen not to pursue arbitration, (*see* Sollestre Decl. ¶ 11), that understanding was quickly dispelled when defense counsel followed up with Plaintiff's counsel on February 3, 2023, and confirmed that Plaintiff's counsel was unwilling to stipulate to arbitration.  (*See* Presser Decl. ¶ 6; Ex. E.)  Approximately seven weeks later—after filing a Joint Discovery Plan, (*see* ECF No. 5), and exchanging initial disclosures pursuant to Rule 26, (*see* ECF No. 5; Presser Decl. ¶¶ 21–23)—Defendant filed the instant Motion on March 24, 2023.  (*See generally* ECF No. 8.)  While Defendant's Motion was pending, Magistrate Judge Goddard held an ENE.  (*See generally* ECF No. 11.)  All told, approximately three months elapsed between when Defendant was served with the Complaint, (*see* ECF No. 1 at 40 (indicating that Defendant's agent for service of process received the Complaint on December 28, 2022)), and when it filed this Motion.

Plaintiff's counsel conceded at oral argument that she does not dispute Defendant's factual assertions in this regard.  Nonetheless, Plaintiff fails to cite to a case in which a party that moved to compel arbitration within approximately three months of being served and engaged only in removing and answering the complaint and, as ordered by the Court, exchanging preliminary disclosures and an ENE had waived its right to arbitrate.  By contrast, the Ninth Circuit recently affirmed an order compelling arbitration when the defendant had "mov[ed] to compel arbitration within a year after [the plaintiff had] filed the complaint" and propounded "limited discovery requests," namely, five interrogatories and requests for production that resulted in the plaintiff producing twenty-eight pages of documents.  *See Armstrong*, 59 F.4th at 1013, 1016.  Here, the only discovery the Parties

have engaged in are initial disclosures, which "are [not] considered extensive discovery." *See Pitman v. Macy's W. Stores, Inc.*, No. 1:20-CV-001259-NONEBAM, 2021 WL 2709635, at *5 (E.D. Cal. July 1), *report & recomm. adopted as modified*, 2021 WL 3514804 (E.D. Cal. Aug. 10, 2021); *accord Greg Opinski Const., Inc. v. Braswell Const., Inc.*, No. 1:09-CV-00641 LJOGSA, 2009 WL 3789609, at *4 (E.D. Cal. Nov. 10, 2009) (staying case pending arbitration in case in which no "significant discovery ha[d] been undertaken and completed" because "only the initial disclosure deadline has passed"). Simply stated, Defendant's limited litigation to date is not inconsistent with it asserting its right to compel arbitration under the terms of the Parties' Arbitration Agreement. *See, e.g.*, *Ashirwad v. Charter Commc'ns, LLC*, No. 21-CV-02101-AJB-DDL, 2023 WL 3564938, at *3 (S.D. Cal. Mar. 20, 2023) (compelling arbitration despite the fact that the defendants had "waited more than 8 months after the lawsuit was filed to compel arbitration, filed an Answer, removed this case to federal court, served initial disclosures, participated in case management conferences, and agreed to amending the scheduling orders in this case"); *Dominguez v. T-Mobile USA, Inc.*, No. EDCV1601429JGBDTBX, 2017 WL 8220598, at *8 (C.D. Cal. Jan. 18, 2017) (compelling arbitration despite the fact that the defendant had "removed the case to this Court, filed an Answer, agreed to exchange informal discovery, submitted the Joint Rule 26(f) Report, participated in the scheduling conference, was served with discovery requests, and requested and received an extension on responding to those requests").   On this record, the Court concludes that Plaintiff has failed to demonstrate that Defendant has waived its right to compel arbitration and, accordingly, the Court **GRANTS** Defendant's Motion.

## III.   Stay or Dismissal

Having determined that the Arbitration Agreement is enforceable as modified and that Defendant has not waived its right to compel arbitration, the Court must determine whether to stay or dismiss without prejudice this action.   (*See* Mot. at 24); *see also Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when, as here, the court

determines that all of the claims raised in the action are subject to arbitration." (citing *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988))). Defendant expresses a preference for dismissal over a stay, (*see id.*), while Plaintiff did not address these alternatives, (*see generally* Opp'n), and therefore has waived any challenge to dismissal. *See, e.g.*, *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913–14 (S.D. Cal. 2021) (citing *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016); S.D. Cal. CivLR 7.1). In its discretion, *see Sparling*, 864 F.2d at 638, the Court therefore **DISMISSES WITHOUT PREJUDICE** this action. *See, e.g.*, *Domingo v. Underground Constr. Co.*, No. 1:22-CV-0487 AWI SAB, 2022 WL 3578578, at *3 (E.D. Cal. Aug. 19, 2022) (dismissing rather than staying action upon compelling all claims to arbitration where the plaintiff had "not demonstrated that staying this case [would be] more efficient or desirable than dismissing it" (citing *Johnmohammadi*, 775 F.3d at 1074; *Sparling*, 864 F.2d at 638)).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Compel Arbitration (ECF No. 8), **ORDERS** the Parties to submit all claims pertaining to this matter to arbitration in accordance with the Arbitration Agreement as modified on the record during oral argument, and **DISMISSES WITHOUT PREJUDICE** this action in its entirety.

**IT IS SO ORDERED.**

Dated: June 29, 2023

Honorable Todd W. Robinson
United States District Judge